UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER KELLY,

Plaintiff,

v.

DOAN CONSTRUCTION COMPANY and INTERNATIONAL BROTHERHOOD OF TEAMSTERS – LOCAL 247,

Defendants.
______________________________/

Case No. 2:24-cv-13169

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING**
**MOTIONS FOR SUMMARY JUDGMENT [18, 20]**

Christopher Kelly, an African American man, was a truck driver for Doan Construction Company for five years and was a member of the International Brotherhood of Teamsters – Local 247 union for 27 years. ECF No. 21, PageID.1150. In July 2024, Doan fired Kelly for punching a co-worker in the face. ECF No. 20, PageID.797. After his termination, Kelly asked Local 247 to arbitrate his termination. ECF No. 18, PageID.165. But his union agent declined to arbitrate, so Kelly appealed to Local 247's Executive Board. ECF No. 21, PageID.1156. The Executive Board heard Kelly's case and affirmed the agent's decision not to arbitrate. ECF No. 18, PageID.165–166. Kelly then sued both Doan and Local 247 for race discrimination, retaliation, failure to represent, violation of a collective bargaining agreement ("CBA"), and failure to provide a copy of the CBA under both state and

federal laws. ECF No. 1, PageID.6-13. At the close of discovery, the defendants each moved for summary judgment. ECF Nos. 18, 20.

Ultimately, Kelly disagreed with his termination and his union's decision not to proceed to arbitration. But that disagreement is not sufficient for a racial discrimination charge. Doan and Local 247 are entitled to summary judgment. Kelly did not present sufficient evidence for his discrimination, retaliation, CBA violation, or failure to represent claims. Nor did Kelly present evidence that he was prejudiced or injured by Local 247's failure to provide a copy of the CBA. Accordingly, the Court will grant both summary judgment motions in full.[1]

## BACKGROUND

On July 19, 2024, Kelly was pouring concrete at a Doan construction site. ECF No. 20, PageID.796. While he was pouring concrete, another employee, Pete Delafuente, Jr., verbally taunted and insulted Kelly. ECF No. 18-2, PageID.205–206. Aggravated, Kelly got out of his truck, approached Delafuente, pointed his finger in Delafuente's face, and demanded not to be spoken to that way. *Id.* at PageID.207. According to Kelly, Delafuente then swung at him and struck him in his outstretched hand. *Id.* In response, Kelly punched Delafuente in the face. *Id.*

Later, Delafuente's father, also a Doan employee, approached Kelly and yelled at him for punching his son. *Id.* at PageID.208–209. But a site foreman defused that exchange, so it never became physical. *Id.* Doan suspended Kelly and subsequently

[1] Based on the parties' briefing, the issues are clear. Accordingly, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2); Practice Guidelines for Judge Stephen J. Murphy, III.

terminated him for violating Doan's workplace violence policy. ECF No. 21, PageID.1154; ECF No. 20-3, PageID.851. Neither Delafuente nor his father, both Caucasian, were fired or disciplined. ECF No. 21, PageID.1154.

Kelly filed a grievance with Doan seeking to have his employment reinstated. ECF No. 18-2, PageID.262. On July 25, 2024, Doan conducted a grievance hearing with Kelly, Local 247 union steward Rich Johnson, and Local 247 union business agent, Tom Ziembovic. ECF No. 20, PageID.797–798. At no point during the grievance hearing did Kelly mention that Delafuente had attempted to strike him. ECF No. 18-4, PageID.333; ECF No. 20-11, PageID.1080. Rather, Kelly's version of events at and before that point was that he punched Delafuente for calling him a "dumbass." ECF No. 20-11, PageID.1079–1080. That was his story to Doan's Vice President, *id.*, the onsite foreman, ECF No. 20-9, PageID.1056, and at least one other Doan manager, ECF No. 20-12, PageID.1084. Further, the only eyewitness to the event did not see Delafuente punch or attempt to punch Kelly. ECF No. 20-10, PageID.1076. Doan therefore denied Kelly's grievance because he violated a work rule. ECF No. 20-5, PageID.866.

Ziembovic, the union agent, declined to arbitrate Kelly's case because he did not think he would be able to prove that Kelly was not the aggressor in the altercation. ECF No. 20-2; ECF No. 21, PageID.1172. On August 19, 2024, Kelly's counsel sent a letter to Local 247 and alleged that the decision not to arbitrate was based on racial discrimination. ECF No. 18-6; ECF No. 21, PageID.1155–1156. The letter also demanded a copy of the applicable CBA. *Id.*

Kelly appealed Ziembovic's decision to the Local 247 Executive Board, and they convened a meeting on September 12, 2024. ECF No. 18-4. Kelly presented his case to the Executive Board, and the members voted unanimously to affirm Ziembovic's decision not to arbitrate. ECF No. 18-3, PageID.331. At the meeting, the members did not discuss the race of anyone involved in the incident. ECF No. 18-3, PageID.330.

Kelly sued Doan and Local 247 in November 2024 for race discrimination, retaliation, failure to represent, violation of a CBA, and failure to provide a copy of the CBA. ECF No. 1. After discovery, both defendants moved for summary judgment. ECF Nos. 18, 20.

**LEGAL STANDARD**

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When it considers a summary judgment motion, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

Kelly brought a race discrimination claim under Title VII against Local 247 and a separate race discrimination claim against both Doan and Local 247 under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"); a retaliation claim against Local 247 in violation of ELCRA, a failure to provide a CBA claim against Local 247 in violation of 29 U.S.C § 414, and a hybrid CBA violation/failure to represent claim against both defendants in violation of the Labor Management Relations Act ("LMRA") § 301. ECF No. 1, PageID.6–13. At the close of discovery, Doan and Local 247 each moved for summary judgment on all claims. ECF Nos. 18, 20. For the reasons below, the Defendants are entitled to summary judgment.

### I. Title VII and ELCRA Discrimination Claims

Discrimination cases can be proven by direct or indirect evidence. Plaintiff alleged an indirect case against his employer, Doan, and a direct evidence case against his union, Local 247. ECF No. 21, PageID.1159, 1162.

*A. Indirect Evidence*

First, in an indirect evidence case, the *McDonnell Douglas*[2] framework applies:

> [T]he plaintiff must first submit evidence from which a reasonable jury could conclude that a prima facie case of discrimination has been established. The defendant must then offer sufficient evidence of a legitimate, nondiscriminatory reason for its action. If the defendant does so, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination.

*Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011) (citations omitted). The Court analyzes the ELRCA claim under the same *McDonnell Dougla*s framework. *See Provenzano*, 663 F.3d at 818 ("Michigan has adopted the *McDonnell Douglas* analysis."); *DeFlaviis v. Lord & Taylor, Inc.*, 223 Mich. App. 432, 437 (1997) (holding that analogous federal precedent on Title VII is highly persuasive in ELCRA cases); *Kuhn v. Washtenaw County*, No. 10-11191, 2012 WL 1229890, at *6 n.3 (E.D. Mich. Apr. 12, 2012) (explaining that the standard for Title VII, § 1981, and ELCRA cases is the same), *aff'd*, 709 F.3d 612 (6th Cir. 2013).

To make out a prima facie case of race discrimination, a plaintiff must produce evidence to show: (1) he is a member of a protected group, (2) he was subject to an adverse employment decision, (3) he was qualified for the position, and (4) he was treated differently than similarly situated non-protected employees. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008). Doan did not dispute that Kelly is a member of a protected class who was subject to an adverse employment decision. ECF

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

No. 20, PageID.803. The first and second elements of the prima facie case are therefore satisfied.

Next, the Court agrees with Kelly that he was qualified for his job as a truck driver. Defendants argued that Kelly was unqualified because he admitted to committing a fireable offense. ECF No. 18, PageID.169; ECF No. 20, PageID.803. Kelly argued that the argument conflated workplace qualifications with at-work conduct. ECF No. 21, PageID.1160–1161. Though he did not cite any authority, the law is nevertheless on his side. At this stage, the Court only considers the employee's objective qualifications. *Wexler v. White's Fine Furniture*, 317 F.3d 564, 575 (6th Cir. 2003). In fact,

> A court *may not consider* the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination.

*Idemudia v. J.P. Morgan Chase,* 434 F. App'x 495, 501 (6th Cir. 2011) (quoting *Wexler*, 317 F.3d at 574) (emphasis added). Therefore, while punching a co-worker in the face may be grounds for termination, it does not concern Kelly's qualifications for the position. To accept Defendants' argument would require the Court to consider what *Wexler* expressly prohibited.

What is more, the sole case Doan cited to support its position, *Coke v. Delta Airlines, Inc.*, 69 F. Supp. 3d 662 (E.D. Mich. 2014), is both non-binding and distinguishable. There, two airport employees were charged with crimes and consequently stripped of their security badges by the airport authority. *Id.* at 665.

Because the badges were necessary for the plaintiffs' positions as baggage handlers, once confiscated, the employees could no longer do their job and, thus, were unqualified. *Id.* at 665–66. In contrast, no external authority removed Kelly's qualifications prior to his termination. Kelly's decision to punch a co-worker was Doan's "alleged nondiscriminatory reason for taking an adverse employment action," so Sixth Circuit precedent precludes the Court from considering it to analyze Kelly's prima facie case. *See Wexler*, 317 F.3d at 574.

Last, Kelly argued that he produced evidence that he was treated differently than at least one similarly situated employee outside his protected class. The Court agrees. To make a comparison to a non-protected employee, a plaintiff must show that they are similarly situated in all relevant respects. *McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005). "[T]he relevant factors . . . often include the employees' supervisors, the standards that the employees had to meet, and the employees' conduct." *Moore v. AMPAC*, 645 F. App'x 495, 499 (6th Cir. 2016) (quoting *Johnson v. The Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003)). The Plaintiff must also prove that the other employee's acts were of comparable seriousness to his own. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Here, Delafuente is a similarly situated employee outside Kelly's protected class as to Defendant Doan. The disputed factor is whether Delafuente's acts were comparably serious. Doan accepted for purposes of summary judgment that Delafuente was the first to initiate physical contact in the exchange with Kelly. ECF No. 18, PageID.164; ECF No. 20, PageID.804. And construing the evidence in Kelly's

favor, the Court will assume that Delafuente attempted to punch Kelly and contacted his outstretched hand. ECF No. 21, PageID.1152. Based on that inference, the two men engaged in the same contact and are therefore similarly situated. And because Delafuente was not terminated, Kelly established that he was treated differently than a similarly situated employee. Delafuente's father is not similarly situated because his conduct did not include physical contact and thus was not of "comparable seriousness." *Mitchell*, 964 F.2d at 583.

Kelly established a prima facie case of discrimination, so the burden shifts to Doan, the employer, to articulate some legitimate, non-discriminatory reason for the termination. *McDonnell Douglas*, 411 U.S. at 802. Doan articulated a non-discriminatory reason: it fired Kelly for violating the workplace non-violence policy. ECF No. 20, PageID.806.

The next step of the analysis requires Plaintiff to prove that Doan's proffered reason is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. Under the "honest belief" rule, "so long as the employer honestly believed in the proffered reason" and reasonably relied on the facts before it at the time, an employee cannot prove pretext. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707–08 (6th Cir. 2006) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998)). That principle holds even if the employer's reason in the end is shown to be "mistaken, foolish, trivial, or baseless." *Id.* (quoting *Smith*, 155 F.3d at 806).

Here, Doan had ample reason to believe that Kelly punched Delafuente; he admitted it several times. ECF No. 21, PageID.1151; ECF No. 20-8, PageID.940.

Consequently, Doan's honestly held belief, reasonably based on the facts it knew, was that Delafuente was not physically violent. Kelly did not provide any "proof to the contrary"—that Doan's decision to fire Kelly and not Delafuente, based on what Doan believed at the time, was pretextual. *Wright*, 455 F.3d at 708 (quoting *Smith*, 455 F.3d at 807). Therefore, his inferential race discrimination claim against Doan cannot survive summary judgment.

*B. Direct Evidence*

Second, Kelly also attempted to make out a direct case of racial discrimination against Local 247. ECF No. 21, PageID.1162. The argument is meritless. He argued that Local 247 "failed and refused to lift a finger to challenge [Doan's] blatant discrimination directed towards [Kelly]." *Id.* According to Kelly, because the union decided not to arbitrate, it "approved and ratified blatant racism towards its member." *Id.*

But Kelly did not even attempt to cite any portions of the record that show direct evidence of discrimination. And the failure is fatal for a direct evidence claim. *See Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010) ("Direct evidence is evidence, which if believed, does not require an inference to conclude that unlawful retaliation motivated an employer's action."). Kelly merely pointed to his disparate treatment argument against Doan. By definition, a disparate treatment theory is not direct evidence of discrimination. And if Kelly cannot make a case for racial discrimination as to Doan, as the Court has found, then he cannot argue that Local 247's decision not to challenge the firing was itself direct evidence of

discrimination. Local 247 is entitled to summary judgment on Kelly's Title VII and ELCRA claims.

II. Failure to Provide CBA and Retaliation Claims

Kelly argued that Local 247's failure to provide him with his CBA is a violation of two statutes, the ELRCA and 29 U.S.C § 414. ECF No. 1, PageID.11–13. His arguments under both statutes fail as a matter of law.

On August 19, 2024, around three weeks after Kelly was fired, his attorney sent a letter to Local 247 to request the CBA in effect during his employment. *Id.* at PageID.1156. Local 247 provided the CBA around six months later in February 2025. ECF No. 18, PageID.181; ECF No. 21, PageID.1167. According to Local 247, it "found the letter in Ziembovic's files following Ziembovic's untimely death in January 2025." ECF No. 22, PageID.1232. Thus, Plaintiff waited at most six months for the CBA.

Kelly's claim under ELCRA is that he engaged in protected activity when he sought his CBA, and that Local 247 retaliated against him when it did not produce the CBA. ECF No. 1, PageID.13. A prima facie case of retaliation requires proof that (1) the plaintiff engaged in a protected activity; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action. *Mys v. Mich. Dep't of State Police*, 886 F.3d 591, 599–600 (6th Cir. 2018); *see also DeFlaviis*, 223 Mich. App. at 437 (recalling that ELRCA claims are analyzed in the same way as Title VII claims).

Kelly's retaliation claim fails on the fourth factor. Kelly produced no facts and made no argument that the two events—his request for the CBA and the union's failure to provide it—were causally connected. *See* ECF No. 21, PageID.1166. At the summary judgment stage, Kelly must do more than simply allege that the union withheld the CBA because of his attorney's letter; he needs evidence on causation. Without any such evidence, Kelly cannot show that the delay in providing the CBA was retaliation for his accusation of racial discrimination in the August 2024 letter. *Id.* Therefore, his ELCRA retaliation claim does not survive summary judgment.

Kelly also claimed that by not providing the CBA in a timely fashion, Local 247 violated 29 U.S.C § 414, a statute that requires labor organizations to forward copies of CBAs to employees who request it.

There is very little caselaw analyzing 29 U.S.C. § 414, and the existing caselaw is not entirely consistent in application. First, courts disagree about whether there is a private right of action to enforce § 414. The statute specifies that "[t]he provisions of section 440 of this title shall be applicable in the enforcement of this section." And § 440 provides a right of action for the Secretary of Labor. But § 412, housed together with § 414 in Subchapter II titled "bill of rights of members of labor organizations," expressly provides a private right of action for aggrieved union members. At least one court has found that the Secretary's right of action is not the exclusive mechanism for enforcing § 414 violations. *See Forline v. Helpers Local No. 42*, 211 F. Supp. 315, 319 (E.D. Pa. 1962). The Court agrees. The text of § 412 provides that "[a]ny person whose rights secured by the provisions *of this subchapter*" may sue. And section 414

is within the same subchapter. Accordingly, the best reading of the statute is that the § 440 right of action is supplementary, not exclusive. Local 247's argument that Kelly lacks a right of action is therefore unpersuasive. *See* ECF No. 18, PageID.181.

But even with a private right of action, Kelly must still show an injury-in-fact for each claim. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 ("Article III standing requires a concrete injury even in the context of a statutory violation."). To prove that he was injured, Kelly had to present facts from which a jury could find that the delay affected his union grievance process. He cannot.

Kelly argued that having the CBA would have strengthened his position before the Executive Board because "[e]ffectively arguing that his rights *under* the CBA were violated, obviously, requires access *to* the CBA." ECF No. 21, PageID.1167. He also argued that because the CBA prohibited racial discrimination, having a copy of it would have allowed him to argue to the Executive Board that his firing was a CBA violation. *Id.* at PageID.1168. But the Executive Board only heard the appeal of Ziembovic's decision not to arbitrate after Kelly's termination. *See generally* ECF No. 18-4. Even if Kelly had more information about his rights under the CBA, that would not have provided additional facts to sway the board to determine that Ziembovic should have arbitrated the claim.

Furthermore, Kelly did not voice any concerns about racial discrimination at the hearing. ECF No. 18-4; ECF No. 18-3, PageID.330. He had likely at least contemplated the possibility since his counsel alleged potential Title VII violations in an August letter a month before the meeting. ECF No. 21, PageID.1155–1156. If Kelly

believed he suffered racial discrimination and that the discrimination was so blatant that it should have persuaded the union to arbitrate or else violate Title VII, he could have made the argument with or without the CBA. But he did not. The decision of the Executive Board was based on the arbitrability of Kelly's case, and race was never discussed either in that meeting or in subsequent Executive Board deliberations. *Id.* Consequently, Kelly cannot prove that he was injured by Local 247's potential § 414 breach. His claim does not survive summary judgment.

III. Hybrid LMRA § 301 Claims

Finally, Kelly brought a hybrid CBA violation/failure to represent claim against both Doan and Local 247 under of the Labor Management Relations Act ("LMRA") § 301. The claim does not survive summary judgment for at least two independent reasons: Kelly did not substantiate a claim that Doan violated the CBA, nor did he provide sufficient evidence that Local 247 breached its duty of fair representation.

In a "hybrid" claim, employees must prove both that the employer breached the CBA and that the union breached its duty of fair representation. *Swanigan v. FCA US LLC*, 938 F.3d 779, 784 (6th Cir. 2019) (citation omitted). And if the employee cannot satisfy both prongs of the test, he cannot succeed against any Defendant. *Id.* Kelly cannot satisfy either prong of the test.

First, Kelly did not show that Doan violated the CBA. He argued that the union violated the CBA's prohibition on racial discrimination. But he raised no additional framework by which the Court should analyze the facts to find that Doan's decision

to terminate Kelly was racially discriminatory. Consequently, the Court relies on its prior determination that Doan's actions were not discriminatory as a matter of law. *See supra* Part I. Furthermore, Kelly admitted that he committed a terminable offense. ECF No. 20-8, PageID.940.

Although the failure of the first prong alone is dispositive, Kelly's argument also fails the second prong. To prevail on a breach of duty of fair representation claim, Plaintiff must show that "the union's actions or omissions during the grievance process were arbitrary . . . or in bad faith." *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003).

Though Kelly argued that Local 247's actions were arbitrary and in bad faith, he presented no facts to support either assertion. ECF No. 21, PageID.1172. "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)).

Ziembovic's decision not to arbitrate was based on his belief that Local 247 could not prove that Kelly was not the aggressor in the altercation in part because Kelly got out of his truck to approach Delafuente. ECF No. 21, PageID.1172. Kelly argued that since getting out of the truck did not itself violate the "no-fighting" policy, Ziembovic's decision was incorrect. *Id.* Kelly, however, provided no basis for his implication that Ziembovic's decision had to be predicated on explicit violations of policy to not be arbitrary. To be sure, "incorrect" and "arbitrary" are not the same

standard. Even if Ziembovic's decision was incorrect, there is no evidence in the record to suggest his decision was outside the wide range of reasonableness.

"[T]o show bad faith, a plaintiff must show evidence of fraud, deceitful action, or dishonest conduct"; "[m]ere negligence or poor judgment" is not enough. *Summers v. Keebler Co.*, 133 F. App'x 249, 253 (6th Cir. 2009). Kelly argued that Local 247's actions in withholding the CBA "amounted to, at best, perfunctory handling and, at worst, 'bad faith.'" ECF No. 21, PageID.1172. Again, Kelly provided no facts that demonstrate fraud, deceitful action, or dishonest conduct. At summary judgment, the Court cannot merely assume that Local 247 acted in bad faith. Consequently, Kelly's hybrid § 301 claim does not withstand summary judgment.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motion for summary judgment [18] is **GRANTED** as discussed above.

**WHEREFORE**, it is hereby **ORDERED** that the motion for summary judgment [20] is **GRANTED** as discussed above.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge